IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARDISAM, INC.,

                Plaintiff,

   v.

SPREETAIL, LLC,

                Defendant.

OPINION and ORDER

23-cv-101-wmc

---

      This case arises out of a failed business relationship between plaintiff Ardisam, Inc. and Spreetail, LLC. Initially, Ardisam filed a breach of contract complaint against Spreetail alleging that Spreetail failed to pay for camping products that Ardisam had sent it. Spreetail then counterclaimed for breach of contract and, in the alternative, fraudulent inducement to contract, alleging that Ardisam sold similar camping products to Amazon despite assuring Spreetail that it would not do so.

      Before the court is Ardisam's motion to dismiss Spreetail's counterclaims under Fed. R. Civ. P. 12(b)(6) (dkt. #17), arguing that Spreetail's contract claim is barred by the statute of frauds and its fraudulent inducement claim is insufficiently pleaded and barred by the economic loss doctrine. For the reasons that follow, the court will deny the motion in full.

1

ALLEGATIONS OF FACT[1]

Spreetail, LLC is an e-commerce business that buys, sells and ships various products. On July 23, 2020, Zane Jones of Spreetail attended a virtual meeting with Bob Fink of Ardisam, Inc., a luxury outdoor product manufacturer, to discuss the 2021 fiscal year strategy between the two companies. During the meeting, Jones expressed a reluctance to enter into a deal with Ardisam if Ardisam intended to sell the same products to first-party sellers, such as Amazon. Fink assured Jones that Ardisam would not sell to Amazon if Spreetail made a purchase in 2021.

Formal negotiations between the two companies began in June 2021. During that month, Fink again reassured Jones that Ardisam would not sell any Gazelle Camping products to Amazon if Spreetail purchased the same products. On June 24, 2021, Jones attended a virtual meeting with Fink and his colleague Rob Kempf to discuss the potential deal. At this meeting, Jones continued to express Spreetail's reluctance to enter into a non-exclusive deal. Kempf confirmed to Jones that Ardisam would not sell Gazelle Camping products to Amazon.

Based on the assurances that Ardisam would not sell the same products to both Spreetail and Amazon, Spreetail submitted a large purchase order for several thousand Gazelle Camping products in December 2021. Payment for the products would be due 45 days after delivery. According to the parties' agreement, the products were subject to

---

[1] The following facts are drawn from Spreetail's counterclaim. (Dkt. #15.) In resolving a motion to dismiss under Rule 12(b)(6), the court takes all the factual allegations in the counterclaim as true and draws all inferences in Spreetail's favor. *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

Ardisam's Minimum Advertisement Pricing policy (MAP policy) which prohibited Spreetail from selling below a certain price point. The deliveries occurred between April 2022 and July 2022, but Spreetail failed to pay Ardisam after receiving the products.

On September 7, 2022, Amazon began selling the same Gazelle Camping products that Ardisam had delivered to Spreetail at a price lower than the listed MAP policy price. As a result of the competition from Amazon, Spreetail alleges that it has lost sales and has an excessive stock of Gazelle Camping products that cannot be sold, despite its best efforts.

Ardisam filed this lawsuit against Spreetail on February 10, 2023, contending that Spreetail breached its contract by failing to pay for products within 45 days of delivery. In its counterclaims, Spreetail contends that: (1) Ardisam breached the contract first, by selling its products to Amazon after promising Spreetail that it would not do so; and (2) in the alternative, Ardisam fraudulently induced Spreetail into purchasing its products.

OPINION

A motion to dismiss under Rule 12(b)(6) shall be granted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss, however, a pleading need only "state a claim to relief that is plausible on its face." *Id.* at 546. A "plausible" claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim does not need comprehensive factual allegations, but it must provide "enough facts to raise [the claim] above the level of mere speculation." *Riley v.*

3

*Vilsack,* 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009). Under this plausibility standard, the court will accept all well-pleaded factual allegations as true, but "legal conclusions [, or] threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [ will] not suffice." *Iqbal,* 556 U.S. at 678. The court addresses whether defendant's alternative counterclaims meet this standard below.

I. **Breach of Contract Counterclaim**

To state a claim for breach of contract under Wisconsin law, a claimant must allege: (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach." *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 801 (W.D. Wis. 2006) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200, 203 (1971)). Both parties agree that they entered into a contract, but they dispute the material terms of the contract.

Ardisam says that the written purchase orders and invoices constitute the parties' contract, as they include the purchase price of the goods, the delivery dates, and when payment was due. However, Spreetail alleges that the contract also included the additional, oral condition that Ardisam not sell the same products to Amazon, and that Ardisam breached this condition in doing so, thus voiding their contract. In response, Ardisam contends that any oral exclusivity agreement was not part of the contract and cannot be enforced pursuant to Wisconsin's statute of frauds.

The statute of frauds provides that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing

4

sufficient to indicate that a contract for sale has been made between the parties. . ." Wis. Stat. § 402.201(1). However, since "not every contract for the sale of goods over $500, nor every modification thereof, strictly complies with the requirements of the statute of frauds, … it would be unreasonable to declare categorically all such contracts unenforceable." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 290 Wis. 2d 264, 275–75, 714 N.W.2d 530, 535 (Wis. 2006). Thus, Wisconsin law recognizes several exceptions that may take a contract outside the statute of frauds. Here, Spreetail argues that three exceptions apply: (1) part performance; (2) the merchant exception rule; and (3) waiver.

Under the doctrine of part performance, receipt and acceptance of goods pursuant to an oral contract qualifies as "part performance" sufficient to take the oral contract out of the statute of frauds. *Gerner v. Vasby*, 75 Wis. 2d 660, 669-70, 250 N.W.2d 319, 325 (1977). The merchant exception provides that a writing confirming a contract between merchants can satisfy the statute of frauds, in some situations. Wis. Stat. § 402.201(2). Finally, in specific situations, waiver may apply if a party attempts to modify a contract. *See id.* §§ 402.209(3); 402.209(4).

The parties agree that the purchase order and invoices construed a written offer and acceptance (i.e., a written contract), making the real question whether any oral amendments to that agreement are enforceable. However, even if some dispute remains as to the enforceability of oral amendments under Wisconsin law under the statute of frauds, "it is sufficient to allege the existence of a contract, leaving the determination of its validity under the statute of frauds for proof at the trial." *Ritterbusch v Ritterbusch*, 50 Wis. 2d 633, 637, 184 N.W.2d 865, 867 (1971). Further, "it is not necessary to allege facts to establish

that the contract *does* comply with the statute or is within its stated exceptions." *Id.* at 636 (emphasis added). Instead, the Supreme Court of Wisconsin has held that allowing breach of contract claims to survive a statue of fraud defense at the pleading stage is "'in accord with the principle that a complaint . . . is to be given a liberal construction to permit all reasonable inferences to be drawn in favor of a finding that a cause of action has been stated.'" *Id.* (quoting *Purtell v. Tehan*, 29 Wis. 2d 631, 636–37, 139 N.W.2d 655, 658 (1966)). At minimum, since both Ariasam and Spreetail allege the existence of a contract, and only dispute one of its terms, Spreetail, as noted above, properly alleged the prima facie case for breach of contract. Whether the contract is barred by the statute of frauds or subject to an exception is a matter to be raised at summary judgment or trial.

II. **Intentional Misrepresentation Claim**

In the alternative, Spreetail counterclaimed for intentional misrepresentation. In order to plead an intentional misrepresentation, a claimant must allege:

> (1) the defendant made a factual representation; (2) which was untrue; (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (4) the defendant made the representation with intent to defraud and to induce another to act upon it; and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment.

*Ramsden v. Farm Credit Services of North Cent. Wisconsin ACA*, 223 Wis. 2d 704, 718–19, 590 N.W.2d 1 (1998) (footnote omitted). Here, Ardisam argues that Spreetail's counterclaim fails for two reasons: (a) failure to plead fraud with specificity; and (b) the economic loss doctrine. Neither argument is persuasive.

### A. Pleading fraud under Rule 9(b)

First, Spreetail's allegations satisfy the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). Under that rule, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means that the claimant must plead the "'identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)). Simply put, "the plaintiff must plead the who, what, when, and where of the alleged fraud." *Id.* (internal citations omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Because Spreetail alleges with specificity the who, what, when, and where of the alleged misrepresentation, its allegations are sufficient to satisfy the pleading requirements of Rule 9(b). The first instance of misrepresentation allegedly occurred on July 23, 2020, during a meeting between representatives of Spreetail and Ardisam, in which Ardisam allegedly agreed to an exclusive arrangement between the businesses. Spreetail's counterclaim further alleges that Ardisam's agreement representation was false when made as evidenced by its sales to Amazon of the same products soon after delivering products to Spreetail. Indeed, although the dates in the complaint show that Amazon began selling the product after delivery was complete, it is reasonable to infer that negotiations between Amazon and Ardisam more likely started during the performance of the contract between

Spreetail, if not before. This inference plays a significant role in establishing the third element as well -- intent or reckless regard of the truth.

In fairness, because negotiations for the contract allegedly started in mid-2020, it may be that Ardisam did not knowingly assert a false statement initially. However, Spreetail's counterclaim also alleges two more specific misrepresentations occurred nearly a year apart, in which Ardisam reportedly assured Spreetail that its deal was exclusive on July 23, 2020 and June 24, 2021. Thus, a reasonable jury might find that Ardisam had at least one year to consider whether it could honor the promise to only sell to Spreetail, and it did not change its answer or provide any clarifying information to Spreetail. Therefore, it is reasonable at the pleading stage to infer that Ardisam acted with reckless regard toward the veracity of its alleged statements or intentionally omitted a change that it knew or recklessly disregarded would be material to Spreetail.

Spreetail's allegations also satisfy the fourth element: Ardisam made the misrepresentations to induce Spreetail to act. Indeed, Spreetail allegedly communicated its hesitance to purchase products from Ardisam if it sold the same products to Amazon, prompting Ardisam to assure Spreetail that it would not do so. Based on these alleged facts, a reasonable jury could infer that Ardisam intentionally, or at least recklessly, made a misrepresentation in order to save negotiations over a possible purchase agreement.

Finally, Spreetail alleges that it relied on the misrepresentations made regarding exclusivity to its detriment: having relied on Ardisam exclusivity promise before purchasing products that it can no longer sell, allegedly despite its best efforts. In sum, Spreetail's

allegations are more than sufficient to state a claim of intentional misrepresentation under Rule 9(b).

### B. Economic loss doctrine

Under Wisconsin law, the economic loss doctrine generally bars recovery on tort claims, such as fraud, on the basis that contract law is better suited to deal with "purely economic losses in the commercial arena." *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111 ¶ 28, 283 Wis. 2d 555, 699 N.W.2d 205. The purpose of the doctrine is to "preserve the distinction between contract and tort by requiring transacting parties to pursue only their contractual remedies." *Id.* However, even leaving aside that there is no bright-line test to determine whether a loss is purely economic, *Triad Group, Inc. v. Vi-Jon, Inc.*, 870 F. Supp. 2d 645, 650-51 (E.D. Wis. 2012), Wisconsin recognizes an exception to the economic loss doctrine relevant here: fraudulent inducement to contract. *Kaloti Enterprises, Inc.*, 2005 WI 111 ¶ 42.

To recover economic losses under a fraudulent inducement to contract claim, Spreetail must allege: (1) the five elements of intentional misrepresentation just discussed; (2) the misrepresentations made by the other party were made *before* the formation of the contract; and (3) the fraud was "extraneous[,] rather than interwoven with[] the contract." *Kaloti Enterprises, Inc.*, 2005 WI 111 ¶ 42, 283 Wis.2d 555, 699 N.W.2d 205. As to the last of these, fraud is deemed "extraneous" when it "concerns matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract." *Id.* Further,

9

"misrepresentations that concern the quality or character of the goods sold, are either: (1) expressly dealt with in the contract's terms; or (2) if they are not dealt with explicitly in the contract's terms, they go to reasonable expectations of the parties to the risk of loss in the event the goods purchased did not meet the purchaser's expectations." *Id.* ¶ 43 (internal citations omitted).

As noted above, Spreetail has sufficiently alleged the five elements of intentional misrepresentation in accordance with rule 9(b) of the Federal Rules of Civil Procedure. As for the remaining two elements, each hinges on the outcome of Spreetail's breach of parties' contract claim. If Spreetail's oral condition regarding exclusivity is found to be a part of the contract, then both of these elements will fail. However, at the pleading stage in the litigation, a party may plead in the alternative and the court will make reasonable inferences in favor of the non-moving party as to all claims. Therefore, for the remainder of this opinion addressing the economic loss doctrine, the court will assume that the oral condition of exclusivity is *not* a part of the contract.

Here, Spreetail allegedly placed its first order with Ardisam on December 13, 2021, and as noted, the earliest allegation of misrepresentation occurred at a Microsoft Teams meeting between the two parties on July 23, 2020. Therefore, Spreetail at least alleges that the misrepresentation occurred *before* the formation of the contract. So, the second element appears met. Further, an allegation of extraneous fraud is sufficient if the fraud does *not* concern any matter of the actual contract. For example, since the written contract includes an offer and acceptance that sets out the delivery dates, the purchase price, and the implicit warranties for the products, any dispute regarding the quality of the good or the

performance of delivery would be "interwoven" with the contract, thus, barring application of the statute of frauds.

At least allegedly, the fraud here concerned the actions of Ardisam apart from the contract entirely: Ardisam allegedly made a representation during the *course of negotiations* with Spreetail; this oral representation was not a part of the contract; and the alleged misrepresentation did not affect the quality of the goods or performance of the contract. Without deciding if any damages resulted, these allegations appear sufficient for a claim for fraudulent inducement that falls outside the economic loss doctrine. Accordingly, Ardisam's motion to dismiss must be denied.

ORDER

IT IS ORDERED that plaintiff Ardisam, Inc.'s motion to dismiss counterclaims (dkt. #17) is DENIED.

Entered this 18th day of July, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge